Theresa STIEBERGER, et al., Plaintiffs,

v.

Louis W. SULLIVAN, et al., Defendants.

No. 84 Civ. 1302 (LBS).

United States District Court,
S.D. New York.

July 29, 1992.

Jane E. Booth, Director of Litigation (Matthew Diller, of counsel), Civ. Appeals & Law Reform Unit, The Legal Aid Soc., David S. Udell, Jonathan A. Weiss, Legal Services for the Elderly, Nancy Morawetz, Burt Neuborne, New York City, for plaintiffs and plaintiff Class.

Jill Ann Boskey, of counsel, Wayne G. Hawley, M.F.Y. Legal Services, New York City, for plaintiffs Theresa Stieberger, Milagros Sullivan, Patricia Happy and plaintiff Class.

O. Peter Sherwood, Corp. Counsel of the City of New York by Neil Corwin, Asst. Corp. Counsel, New York City, for plaintiff The City of New York.

Brook Hedge, Brian G. Kennedy, Terry M. Henry, Attys., U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, D.C., for defendants; Donald A. Gonya, Chief Counsel, Randolph W. Gaines, Deputy Chief Counsel, for Social Sec., A. George Lowe, Deputy Chief Counsel, for Disability Litigation, Donna J. Fuchsluger, Marlene W. Heiser, Attys., Social Sec. Div.,

Office of the Gen. Counsel, U.S. Dept. of Health and Human Services, of counsel.

## STIPULATION AND ORDER REGARDING MODIFICATION OF SETTLEMENT

SAND, District Judge.

The parties, by their respective attorneys, hereby stipulate and agree as follows:

1. The parties construe the definition of the class on page 1 of the Settlement Agreement entered on the docket by the Court on June 22, 1992, 792 F.Supp. 1376, as including individuals who resided in New York State on the date of the SSA decision to deny or terminate their claim for or continuation of disability benefits, unless they later established residence outside of New York State and SSA thereafter issued a final termination or denial on administrative review of the same claim.

2. The Settlement Agreement is modified as follows, with alterations indicated by strikeouts and underlining:

(A) "[9](d) A class member shall be considered to have requested reopening if the class member (i) mails a postage prepaid, pre-addressed form enclosed with the individual notice, or (ii) makes a written request to any SSA FO or hearing office within the State of New York or to the Appeals Council, or (iii) telephones a request to any SSA FO or hearing office within the State of New York or the Appeals Council, or (iv) makes a request in person at any SSA FO or hearing office within the State of New York, or (v) makes a request in writing or in person to any SSA field office if the individual no longer resides in New York State."

(B) "10. After a class member described in paragraph 8 requests reopening under paragraph 9 and is determined to meet the criteria in paragraphs 8 and 9, SSA will provide relief as explained in this paragraph. In adjudicating reopened claims, SSA shall require its decisionmakers and reviewers of decisions to apply the holdings in Second Circuit disability decisions in accordance with the provisions set forth in this settlement agreement, including the instruction set forth as Attachment 1, except that, in adjudicating reopened claims at the hearing and Appeals Council review levels outside of New York State for individuals who no longer reside in New York State, decisionmakers will use standards and procedures in effect in the state in which the individual resides at the time of the OHA decision. SSA will issue a reminder to decisionmakers and reviewers to apply the Circuit Court Case Guide in HALLEX in adjudicating reopened claims at the hearing and Appeals Council review levels outside of New York State for individuals who no longer reside in New York State. SSA shall require the decisionmakers and reviewers to apply the law in effect on the date on which the new determination on the reopened claim is rendered."

(C) "[10](a) SSA shall reopen, and review de novo, class member claims, except that no claims shall be reopened pursuant to this settlement for which SSA denied or terminated benefits on administrative review (on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1) in a final decision or determination on a date when the individual no longer resided in New York State, and no claims shall be reopened pursuant to this settlement for which the denial or termination of benefits was affirmed on the merits by a final decision of a federal court under 42 U.S.C. § 405(g), as of the date of settlement, except as provided by subparagraph 10(b)(4). No claim shall be subject to reopening for which the denial or termination of benefits was overturned as the result of an administrative or judicial appeal."

(D) "[10](b) Class members entitled to reopening under paragraph 8, who have civil actions pending pursuant to 42 U.S.C. § 405(g) or § 1383(c)(3) in one of the four United States District Courts situated in New York State or in the United States Court of Appeals for the Second Circuit as of the date of settlement based upon an Appeals Council denial of a request for review or an Appeals Council decision of

denial or termination, issued on or before the date of issuance of Attachment 1, will be given the option of proceeding with their individual court cases or receiving reopening pursuant to this settlement. SSA shall promptly provide each such class member or the class member's representative in court with a notice (Attachment 3) explaining this option."

(E) "[10(b) ](4) If any such class member or his or her representative in court does not receive this notice, the class member shall have the right to have his claim reopened under this settlement, as a pending claim under subparagraph 10(e)(3), even after issuance of an adverse federal court decision, so long as the class member's court case was pending on or before (as appropriate) 60 days after the date of issuance of Attachment 1."

(F) "[10(d) ](3) As alerts are transferred to the FOs, reopened claims for class members currently residing in New York State will be integrated into the regular claims determination workload of the New York ODD and will be completed within a reasonable time and with no less priority than such regular claims. Reopened claims for class members who do not reside in New York State will also be completed within a reasonable time."

(G) "[10(e) ](4) In conducting each reopening of claims that are not pending, SSA shall develop the record in accordance with 20 C.F.R. §§ 404.1512–.1518, 416.912–.918 for a four-year period preceding the date SSA receives the request for reopening of the claim(s). In computing the four-year period, SSA shall not count any period for which the person (i) received disability benefits, (ii) received retirement benefits, or (iii) has an active claim for disability or retirement benefits, or (iv) has a final denial or termination (on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1) issued on a date when the person no longer resided in New York State. SSA shall also develop the record for the period subsequent to the date SSA receives the request for reopening, unless the person has al-

ready demonstrated entitlement to benefits for this period. SSA need not develop the record for any period of time prior to the effective date of the earliest claim subject to reopening or for any period of time for which SSA determines that the individual is disabled without further development."

(H) "[10(e) ](5) If SSA determines (at any step of the sequential evaluation process) that the individual is not disabled, or is not entitled to disability benefits because of SGA, for all or any part of the period for which the record is developed under subparagraph 4, SSA will also develop the record for the additional earlier period for which there is in effect an application the determination on which establishes the opportunity for reopening as set forth in paragraph 8 (except for periods for which SSA has issued a final denial or termination on a date when the individual resided outside of New York State on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1), if...."

(I) "[10(e) ](7) When a person is found entitled to disability benefits on a non-pending claim or claims reopened under this paragraph, all payments on such claims are subject to the regular payment, nonpayment and reduced payment provisions of the Social Security Act and payments will be made as follows ...

(iii) In computing the period for which payment is possible under subparagraphs 10(e)(7)(i) and (ii), SSA shall not count periods for which the person has already been paid disability or retirement benefits, or periods for which the person may be eligible for payment under an active claim, or periods for which SSA has issued a final denial or termination (on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1) when the person resided outside of New York State. In addition, payment need not be made on the basis of any application filed earlier than the application the determination on which establishes the opportunity for

reopening as set forth in paragraph 8. Earlier periods of entitlement followed by periods of nonentitlement will be treated as closed periods ..."

SO ORDERED.

### FIRST MODIFIED SETTLEMENT AGREEMENT

### (INCORPORATING MODIFICATIONS APPROVED BY THE COURT ON July 29, 1992)

WHEREAS, an amended class action complaint was filed on August 3, 1984, and

WHEREAS, a plaintiff class was certified on August 19, 1985, and subsequently modified on December 20, 1985, and is now defined as

All New York residents whose claims for benefits or continuation of benefits have been, or will be denied or terminated since October 1, 1981, based on a determination that they do not have a disability that prevents them from engaging in substantial gainful activity and whose benefits have not been granted or restored through subsequent appeals

WHEREAS, on May 29, 1990, the court rendered a decision on plaintiffs' motion for summary judgment and on defendants' motion for partial summary judgment and cross motion for judgment on the pleadings; and

WHEREAS, the parties wish to avoid further litigation in this matter,

THEREFORE, all parties to this civil action by their undersigned counsel, hereby agree, subject to the approval of the court, to the settlement of plaintiffs' claims in this litigation, in accordance with the following terms and conditions:

1. Definitions that apply to this Settlement.

(a) Disability Benefits—Benefits provided by the Social Security Administration pursuant to Titles II and XVI of the Social Security Act for persons who meet the definition of disability contained therein.

(b) Social Security Administration ("SSA")—The Federal agency that is responsible for deciding claims for disability benefits. SSA includes the Office of Hearings and Appeals ("OHA") that decides such claims at the Administrative Law Judge ("ALJ") and Appeals Council levels of administrative review, and components that supervise and review the adjudication of claims by the Office of Disability Determinations. SSA also includes various offices which employ disability examiners.

(c) Office of Disability Determinations ("ODD")—The state agency that decides disability claims in the State of New York at the initial and reconsideration levels of administrative review on behalf of SSA pursuant to 20 C.F.R. §§ 404.1600 ff; 416.-1000 ff.

(d) Decisionmakers—SSA and ODD personnel who decide disability benefit claims of New York State residents under 20 C.F.R. Part 404, Subpart P; Part 416, Subpart I.

(e) Reviewers of decisions—SSA and ODD personnel who conduct quality assurance, pre-effectuation or other reviews of determinations on disability claims of New York State residents.

(f) Second Circuit disability decisions—Decisions of the United States Court of Appeals for the Second Circuit in which the Secretary of HHS is a party that are or will be published, that address the issue of whether an individual, or individuals is or are disabled within the meaning of 42 U.S.C. §§ 423(d), 1382(c) or that address the standards or procedures for making such determinations. Pursuant to this definition the following decisions are among those not considered "Second Circuit disability decisions:" *Gutierrez v. Bowen,* 898 F.2d 307 (2d Cir.1990) *Valente v. Sullivan ("Valente II"),* 897 F.2d 54 (2d Cir.1990); *Barone v. Bowen,* 869 F.2d 49 (2d Cir. 1989); *Conley v. Bowen,* 859 F.2d 261 (2d Cir.1988); *DeRienzis v. Heckler,* 748 F.2d 352 (2d Cir.1984); *Matsibekker v. Heckler,* 738 F.2d 79 (2d Cir.1984); *Valente v. Sec. of Health and Human Services,* 733 F.2d 1037 (2d Cir.1984); *Delamater v. Schweiker,* 721 F.2d 50 (2d Cir.1983); *Dietsch v. Schweiker,* 700 F.2d 865 (2d Cir.1983).

(g) Date of settlement—Date on which this settlement is entered by the Court.

(h) Computation of time—Time periods under this agreement: (i) exclude the day of the event from which the time period runs; (ii) for time periods of less than 11 days, exclude any day that an office that is responsible for taking the action under this agreement during the time period is closed for business (*e.g.*, Saturday, Sunday, legal holiday, or due to weather or other emergency); and (iii) if such an office is closed on the date an action under this agreement is due, such action shall be due the next day the office is open for business.

2. SSA shall direct all decisionmakers and reviewers of decisions to comply with holdings in Second Circuit disability decisions in adjudicating or reviewing claims for disability benefits in accordance with the provisions of this settlement agreement.

3. SSA shall issue the attached instruction to all decisionmakers and reviewers of decisions (Attachment 1) within ten days of the date of settlement. The instruction shall be binding on all decisionmakers and reviewers of decisions. SSA shall publish the instruction in the Federal Register, the HALLEX, the Manual of Second Circuit Disability Decisions, described below at subparagraph 4(b), and the Program Operations Manual System ("POMS") and shall include the instruction in all introductory training materials distributed to decisionmakers and reviewers of decisions and all materials provided to administrative law judges who travel to New York to decide disability claims of New York State residents. SSA shall make good faith efforts to publish the instruction within 90 days after the date of settlement.

4. (a) SSA shall provide each office of decisionmakers and reviewers of decisions with a copy of this settlement agreement.

(b) SSA shall provide a Manual of Second Circuit Disability Decisions ("Manual") to all decisionmakers and reviewers of decisions. The Manual shall contain statements of the principal holdings of Second Circuit disability decisions issued before the date of settlement. The Manual need not describe each Second Circuit disability decision issued before the date of settlement but must state principal holdings that address whether an individual or individuals is or are disabled within the meaning of 42 U.S.C. §§ 423(d) or 1382(c) or the procedures and standards for making such determinations.

(c) The parties agree that the statements of the holdings of Second Circuit disability decisions set forth in the Manual are good faith interpretations of the court's holdings. However, the parties do not stipulate that these statements are complete, or that they are the correct interpretations of Second Circuit disability decisions.

(d) Following issuance of the Manual, SSA may, but is not required by this settlement agreement to, issue instructions with respect to any Second Circuit disability decision issued before the date of settlement. The provisions of subparagraphs 5(c) and 5(d) (with the exception of the first sentence of subparagraph 5(c)) apply to such instructions.

(e) SSA shall add in a prominent location at the beginning of the section of the Circuit Court Case Guide in HALLEX that discusses caselaw of the Second Circuit the following text: "Adjudicators of disability claims of New York State residents involving medical or vocational issues are reminded that they are required to apply the controlling Second Circuit holdings set forth in the Manual of Second Circuit Disability Decisions attached to the instructions for implementing the *Stieberger* court-approved settlement." SSA shall also add this same text to the other sections of the HALLEX that discuss caselaw of the Second Circuit, including: (i) HALLEX I–3–307 ("Other Bases for Appeals Council Review") and (ii) HALLEX I–3–390, Exhibit 1 ("Citation Guide Circuit Court Cases for Citation"). The Manual shall be available for inspection and copying by the public in SSA field and hearing offices in New York.

(f) SSA may remove the instruction in the Manual concerning *Schisler v. Sullivan* at such time as the instruction is rescinded due to the modification, stay, or vacatur of the order in *Schisler v. Sulli-*

*van,* dated October 25, 1991, 1991 WL 224407, or other event that operates to rescind the instruction. The inclusion of the instruction concerning *Schisler* does not constitute an admission of any kind by SSA and is without prejudice to any claim, defense, or other contention that SSA may assert or raise in any other action.

5. SSA shall use the following procedures with respect to Second Circuit disability decisions rendered after the date of settlement:

(a) SSA shall require each office of decisionmakers and reviewers of decisions to maintain a volume containing copies of all Second Circuit disability decisions that are issued after the date of settlement. SSA shall provide each office of decisionmakers and reviewers of decisions with a copy of each Second Circuit disability decision promptly after it is issued by the Court for inclusion in the volume. The volume shall be readily accessible to decisionmakers and reviewers of decisions in each office.

(b) Within ten days after the Second Circuit issues the mandate in a case or designates an opinion for publication, whichever is later, SSA will, by teletype or other written means, transmit to decisionmakers and reviewers of decisions a copy of or instruction pertaining to the Second Circuit disability decision. An instruction will include a summary of the decision together with a directive to follow the decision. Any decision or instruction distributed pursuant to this subparagraph shall be issued for inclusion in the Manual described in subparagraph 4(b).

(c) If SSA distributes a decision pursuant to subparagraph 5(b) without an instruction, then within 90 days after the Second Circuit issues a mandate in a case or designates an opinion for publication, whichever is later, SSA will issue a written instruction to decisionmakers and reviewers of decisions at the initial and reconsideration levels regarding application of the holding of the Second Circuit disability decision. SSA may, but need not, issue such instructions to decisionmakers and reviewers of decisions in OHA. Once SSA has issued an instruction, it may at any subsequent time issue further instructions. If SSA determines that a holding of a Second Circuit disability decision has become obsolete (lacking in any precedential force at all, e.g., overruled by the Supreme Court, by the Second Circuit or by statute) SSA may issue written instructions to decisionmakers and reviewers of decisions stating the good faith basis of this determination and instructing them accordingly. SSA shall send any such instructions to five individuals or other entities specified on a list which plaintiffs' counsel will provide to defendants' counsel. Plaintiffs' counsel may periodically have the list revised or updated upon request communicated by plaintiffs' counsel to defendants' counsel. All instructions shall be issued for inclusion in the Manual described in subparagraph 4(b).

(d) This agreement does not mandate minimum standards of sufficiency or accuracy for instructions issued pursuant to this paragraph. However, this agreement does mandate that instructions issued pursuant to this paragraph shall be based on good faith interpretations of disability decisions. This agreement does not preclude any claims brought in another action challenging the sufficiency or accuracy of such instructions, other than claims that the instructions are not based on good faith interpretations of disability decisions, nor does this agreement authorize such challenges or imply an agreement that such challenges may be maintained.

(e)(1) If any party to an action decided by the Second Circuit seeks further review of the decision, either through a petition for rehearing or certiorari, or at any point when such a petition would be timely, SSA may issue written instructions to decisionmakers and reviewers of decisions not to apply some or all holdings stated in the decision and may rescind any instruction issued under subparagraphs 5(b) or (c) regarding that decision. The time period in which to issue instructions pursuant to subparagraph 5(c) regarding that decision shall be tolled for any period in which an instruction not to apply a Second Circuit holding issued pursuant to this subparagraph is in effect.

(2) In the event that instructions are issued pursuant to subparagraph 5(e)(1) not to apply a holding of a Second Circuit disability decision and neither a petition for rehearing nor a petition for certiorari is granted, then, within ten days from the date the Second Circuit decision is no longer subject to further review through rehearing or certiorari, SSA shall, by teletype or other written instruction, rescind any instructions that were issued pursuant to subparagraph 5(e)(1).

(3) In the event that instructions are issued pursuant to subparagraph 5(e)(1) not to apply a Second Circuit disability decision and a petition for rehearing or certiorari is granted, then within ten days from the date a final decision on the merits is rendered in that case, SSA shall by teletype or other written instruction notify decisionmakers and reviewers of decisions about the court's final decision. If the final decision is a new decision by the Second Circuit on rehearing, the new decision on rehearing shall replace the previous Second Circuit decision to the extent that decision has been superseded by the rehearing decision, and SSA shall modify or rescind any instructions that were issued pursuant to subparagraph 5(e)(1) accordingly. If the final decision is a Supreme Court decision, then SSA shall rescind any instructions issued pursuant to subparagraph 5(e)(1) for any holding of the Second Circuit to the extent it is not superseded by the Supreme Court's decision, and shall comply with any such holding in accordance with the procedures set forth in this paragraph for Second Circuit disability decisions generally.

(4) When SSA issues a subparagraph 5(e)(1) instruction not to apply a holding of a Second Circuit disability decision, the instruction shall identify the issues addressed by the holding, and shall instruct each office of decisionmakers and reviewers of decisions to list any cases that might be affected if the holding were to be applied. In addition, the notice denying or partially denying any such claim will include the notice language stated in paragraph D.2 of Attachment 1. After a subparagraph 5(e)(1) instruction is rescinded, the responsible decisionmaking components shall promptly review the listed decisions as well as the decision of any unlisted claimant who shows that his or her claims decision made after the effective date of the subparagraph 5(e)(1) instruction may have been affected by application of the final court decision. Such reviews shall apply the final court decision unless it is inapplicable and shall assess disability for the time period covered by the claims decision under review unless the application of the final court decision requires development of the evidence; when development of the evidence is required, the review shall also assess current disability. Each claimant may appeal the decision made on his or her claim after such review. However, if review results in the determination that the final court decision is inapplicable to the claimant's case, the claimant may only appeal the issue of whether or not the final court decision is applicable to the claimant's case. This paragraph does not waive or foreclose any appeal rights that any claimant may have apart from the review provided for by this paragraph. SSA need not review any cases pursuant to this subparagraph in order to apply holdings of the Second Circuit to the extent that the holdings have been superseded by the Supreme Court or by the Second Circuit on rehearing.

(5) Any instructions issued pursuant to subparagraph 5(e)(1) and any modification or rescission of such instructions issued pursuant to subparagraphs 5(e)(2) and (3) shall be published in the Federal Register.

6. SSA shall rescind, insofar as applicable to claims of New York State residents for disability benefits, all written, oral, or computer-based instructions, policies, procedures, and rulings, other than regulations, (if any) to the extent that such directives state: (a) a general policy of nonacquiescence; (b) that the Secretary's decisionmakers and reviewers of decisions are bound only by rulings of the United States Supreme Court; (c) that decisionmakers and reviewers of decision shall not follow the law of the courts of appeals where the courts' holdings are in disagreement with the Secretary's interpretation of

Titles II or XVI of the Social Security Act or the Secretary's implementation thereof; (d) that the Secretary's decisionmakers and reviewers of decisions are not to consider a decision of a court of appeals to be binding absent adoption of the holding in an acquiescence ruling; (e) that decisions of the courts of appeals apply only in a specific case in which a court of appeals ruling was rendered; or to the extent that such directives are inconsistent with the terms of this settlement. SSA shall instruct all decisionmakers and reviewers of decisions that any regulations are not to be applied to the extent that they contain statements or policies described in this paragraph. This paragraph does not require the Secretary of HHS to repeal 20 C.F.R. §§ 404.985, 416.1485.

7. (a) In making any determination on any claim for benefits by any class member, SSA shall not, except to the extent stated in subparagraph (b), preclude the determination of whether a claimant is or, at any material time, was disabled under the Social Security Act on the ground that the issue had previously been determined administratively in considering a prior claim for benefits between October 1, 1981, and the date of issuance of Attachment 1.

(b) This paragraph shall not apply in any of the following circumstances:

(1) the class member was not a resident of New York State at the time of the prior administrative determination;

(2) an action for judicial review or administrative appeal of the prior determination was filed or would be timely on or after the date of issuance of Attachment 1;

(3) the issue as to which preclusion applies concerns any issue other than medical or vocational issues, such as the assets, income, quarters of coverage, earnings of the claimant, fraud, or whether the claimant had engaged in substantial gainful activity ("SGA").

8. Those class members who meet the following criteria will have an opportunity to have their cases reopened in accordance with paragraphs 9 and 10:

(a) The class member had a disability claim denied or terminated between October 1, 1981, and the date of issuance of Attachment 1 on the ground that the class member was not, or was no longer, disabled (denials or terminations for fraud, quarters of coverage, excess income or resources, earnings at the SGA level, or for other reasons unrelated to disability are not included); and

(b) The class member was a New York State resident at the time of the denial or termination; and

(c) The class member had a disability claim denied or terminated,

(i) at any level of administrative review between October 1, 1981, and October 17, 1985, inclusive; or

(ii) at the ALJ or Appeals Council level between October 18, 1985, and the date SSA issues Attachment 1, inclusive.

9. (a) SSA shall identify class members who, on the basis of data available in SSA's data processing systems are potentially within the portion of the class described in paragraph 8. SSA shall identify class members by name, Social Security Number ("SSN") or claim number (or both where available), and last known address and shall make good faith efforts to complete identification within 120 days after the date of settlement. SSA shall notify plaintiffs' counsel, within 90 days after the date of settlement, of the status of the identification process. If SSA does not expect to complete identification within the 120–day period, it shall provide class counsel a schedule for completion. Upon completion of identification, SSA shall provide plaintiffs' counsel with two lists of the persons identified as class members: (1) one alphabetical, by last name, (2) one by zip code. The lists will set forth each person's name, SSN or claim number (or both where available), and most current address available to the Social Security Administration. The lists may be supplied on computer disk or other method agreed to by the parties.

(b) SSA shall send individual notice (Attachment 2) by first-class mail to the last known address of the individuals identified pursuant to subparagraph 9(a). Within 120

days of identification, SSA shall mail the notices to all individuals who are scheduled to receive notice under this settlement. The notice shall state that the individual may be entitled to reopening of his or her claim for benefits, and that, in order to request reopening the individual should mail an enclosed, postage pre-paid, pre-addressed form to SSA. The notice shall also state that the individual may request assistance at any field office ("FO") within New York State.

(c) Individuals who receive the notice referred to in subparagraph 9(b) shall have 180 days from receipt within which to respond to the notice. The date the individual receives the notice will be deemed to be five days after the date on the notice, unless the individual shows that he or she did not receive it within the five-day period. If an individual who received an individual notice does not respond within 180 days of receipt, his or her disability claim will not be considered for reopening under this settlement agreement absent a finding of "good cause," as defined in 20 C.F.R. §§ 404.911; 416.1411.

(d) A class member shall be considered to have requested reopening if the class member (i) mails a postage prepaid, pre-addressed form enclosed with the individual notice, or (ii) makes a written request to any SSA FO or hearing office within the State of New York or to the Appeals Council, or (iii) telephones a request to any SSA FO or hearing office within the State of New York or the Appeals Council, or (iv) makes a request in person at any SSA FO or hearing office within the State of New York, or (v) makes a request in writing or in person to any SSA field office if the individual no longer resides in New York State.

(e) SSA shall maintain a computerized tracking system that records the name and address of each person who requests reopening by returning the form enclosed with the individual notice (Attachment 2) and the date the request was received by SSA. SSA shall enter the same information into the tracking system for other requests for review as such information is received by SSA's central office. SSA will provide information reasonably available from this tracking system on request by plaintiffs' counsel.

(f) (1) After a request for reopening is received by SSA, SSA will provide the person who requests reopening ("requester") with a written acknowledgment that a request for reopening was received. Unless the acknowledgment states the date of the request or, pursuant to subparagraph 9(f)(2) states that the timeliness of the request is disputed or uncertain, the request shall be deemed timely.

(2) If it appears to SSA that the request for reopening may be untimely, SSA will state in the acknowledgment (a) that the timeliness of the request is uncertain or disputed by SSA, and (b) either the date on which the request was received or that the request was received on or after a date certain that is at least 240 days after the date on which SSA sent the notice to which the requester is responding.

(3) SSA shall make good faith efforts to provide the acknowledgment within 30 days of SSA's receipt of the request. For individuals who request reopening in person, SSA shall, at the time of the request, provide either (a) the acknowledgment contemplated in this paragraph, or (b) other written, dated substantiation that the request was made.

(g) A class member's request for reopening of his or her claim shall constitute a request for reopening of all of his or her claims subject to reopening under this agreement. Class members' responses to individual notices shall be construed by SSA to be requests for reopening where the class member's intention is ambiguous or unclear.

(h) SSA will determine whether each requester meets the criteria in paragraph 8 and has properly requested reopening in accordance with subparagraphs 9(c), (d), and (g). SSA shall make this determination within a reasonable time.

(1) If SSA determines that a requester does not meet the criteria in paragraph 8 or has not properly requested reopening in accordance with subparagraphs 9(c), (d),

and (g), SSA will send a notice of the determination to the requester. The notice will state the reasons for SSA's determination and explain that: (a) the requester will have 60 days from receipt of the notice to notify in writing the Office of the General Counsel ("OGC"), Department of Health and Human Services, Altmeyer Building, Room 600, 6401 Security Boulevard, Baltimore, Maryland 21235, that he or she disagrees with the determination; (b) the requester may request inspection of his or her administrative record upon which the determination was based and, as needed, the relevant claims file; and, (c) the requester will have 45 days to inspect the record at an SSA office mutually agreeable to the parties once the requester is notified that the record is available for inspection. If the requester does not notify OGC in writing that he or she disagrees with the determination within 60 days of receipt of the notice, the determination shall become final and shall not be subject to further review absent a finding of good cause, as defined in 20 C.F.R. §§ 404.911, 416.1411. For purposes of this subparagraph only, SSA district and branch offices will accept on behalf of OGC a requester's written notification of disagreement with the determination.

(2) OGC will attempt to resolve through negotiation all disputes concerning the determinations made pursuant to this subparagraph. OGC shall apprise class counsel of all such disputes, and class counsel shall make good faith efforts to assist in resolving such disputes. To further such resolution of disputes, class counsel shall be allowed to inspect the administrative record on which the decision was based and, as needed, the relevant claims file, if so requested, without regard to whether the requester made such a request in response to a notice sent pursuant to subparagraph 9(h)(1). If the requester has made such a request, OGC may arrange for the requester and class counsel to make such inspection concurrently. If the parties cannot resolve the question of a requester's entitlement to relief through negotiation, OGC will confirm to the requester and class counsel, in a written notice, that the dis-

pute cannot be resolved. This notice shall be sent within a reasonable time. The notice will state that if within 60 days of receipt of OGC's written confirmation, the requester does not request the district court's review of the determination, the determination will become final and not subject to further review. The requester or class counsel may request the district court's review by filing a "Notice of Challenge to Decision Denying Reopening Under *Stieberger v. Sullivan*" with the district court in this action. Such a notice may be filed no later than 60 days after receipt of OGC's confirmation that the dispute cannot be resolved. Upon filing of such a notice, SSA shall file such agency records as the Court determines relevant to resolution of the dispute. Disputes under this paragraph that are submitted to the Court pursuant to paragraph 19 may be referred to a magistrate judge.

(3) For purposes of this subparagraph 9(h), the date of receipt of a notice will be deemed to be five days after the date on the notice, unless the requester shows that he or she did not receive it within the five-day period.

(i) When individual notices are returned as undeliverable, SSA will attempt to obtain updated addresses by providing a computer tape to the New York State Department of Social Services and the New York City Human Resources Administration for the sole purpose of obtaining addresses through a computerized match with public assistance, food stamp, and/or other relevant records. SSA's attempt to obtain updated addresses is subject to the requirements of the Privacy Act, as amended by the Computer Matching and Privacy Protection Act, 5 U.S.C. § 552a ("Privacy Act"). SSA shall not be obligated to bring legal proceedings to gain access to such data system records. SSA shall mail notices to potential class members for whom new addresses are provided. SSA shall identify for class counsel all potential class members for whom it did not obtain new addresses, and shall also identify for class counsel such potential class members whose notices were returned as undelivera-

ble after the mailing to the new addresses. The information shall be provided in increments as it becomes available to SSA. Plaintiffs' counsel shall have 180 days after receipt of this information to furnish current addresses for such individuals. Upon timely receipt of such addresses from plaintiffs' counsel, SSA will mail a final notice to potential class members.

10. After a class member described in paragraph 8 requests reopening under paragraph 9 and is determined to meet the criteria in paragraphs 8 and 9, SSA will provide relief as explained in this paragraph. In adjudicating reopened claims, SSA shall require its decisionmakers and reviewers of decisions to apply the holdings in Second Circuit disability decisions in accordance with the provisions set forth in this settlement agreement, including the instruction set forth as Attachment 1, except that, in adjudicating reopened claims at the hearing and Appeals Council review levels outside of New York State for individuals who no longer reside in New York State, decisionmakers will use standards and procedures in effect in the state in which the individual resides at the time of the OHA decision. SSA will issue a reminder to decisionmakers and reviewers to apply the Circuit Court Case Guide in HALLEX in adjudicating reopened claims at the hearing and Appeals Council review levels outside of New York State for individuals who no longer reside in New York State. SSA shall require decisionmakers and reviewers to apply the law in effect on the date on which the new determination on the reopened claim is rendered.

(a) SSA shall reopen, and review *de novo*, class member claims, except that no claims shall be reopened pursuant to this settlement for which SSA denied or terminated benefits on administrative review (on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1) in a final decision or determination on a date when the individual no longer resided in New York State, and no claims shall be reopened pursuant to this settlement for which the denial or termination of benefits was affirmed on the mer-

its by a final decision of a federal court under 42 U.S.C. § 405(g), except as provided by subparagraph 10(b)(4). No claim shall be subject to reopening for which the denial or termination of benefits was overturned as the result of an administrative or judicial appeal.

(b) Class members entitled to reopening under paragraph 8, who have civil actions pending pursuant to 42 U.S.C. § 405(g) or § 1383(c)(3) in one of the four United States District Courts situated in New York State or in the United States Court of Appeals for the Second Circuit based upon an Appeals Council denial of a request for review or an Appeals Council decision of denial or termination, issued on or before the date of issuance of Attachment 1, will be given the option of proceeding with their individual court cases or receiving reopening pursuant to this settlement. SSA shall promptly provide each such class member or the class member's representative in court with a notice (Attachment 3) explaining this option.

(1) If the class member decides to accept reopening while the court case is still pending, SSA will stipulate to remanding the claim for reopening under the settlement as a pending claim under subparagraph 10(e)(3).

(2) If, after being notified of the right to remand, the class member decides to proceed with the individual court case, the class member waives any right to reopening of that claim under this settlement, but retains any right under this settlement to reopen other claims.

(3) If the class member does not timely respond to this notice, SSA may defend the case in court, move to remand the case for reopening under this settlement, or otherwise seek resolution of the case.

(4) If any such class member or his or her representative in court does not receive this notice, the class member shall have the right to have his claim reopened under this settlement, as a pending claim under subparagraph 10(e)(3), even after issuance of an adverse federal court decision, so long as the class member's court case was pend-

ing on or before (as appropriate) 60 days after the date of issuance of Attachment 1.

(c)(1) SSA may consolidate the reopening of a class member's claim(s) under this agreement (and/or any appeal from such reopening) with a review, reexamination, or other reevaluation mandated by another class action (and/or any appeal from such review, reexamination, or other reevaluation) whenever the class member is accorded his or her full rights under this settlement as well as those under the other class action.

(2) SSA need not reopen disability claims that were already reevaluated under other class actions if (a) the reevaluation in the other class action occurred after the date of issuance of the instruction set forth in Attachment 1, (b) the reevaluation in the other class action covered the time periods for which payment is possible under this settlement and did not restrict payments for such time periods, (c) the reevaluation in the other class action considered evidence to the extent provided in subparagraphs 10(e)(3)–(6) of this paragraph, and (d) the reevaluation procedure in the other class action afforded the claimant full appeal rights.

(d) SSA will process claims reopened pursuant to this paragraph in accordance with the following schedule:

(1) SSA will make good faith efforts to forward to plaintiffs' counsel within 120 days after the date of settlement a draft of POMS instructions and HALLEX instructions, if any, needed to effectuate paragraphs 8, 9, and 10 of this agreement.

(2) Within 60 days after these POMS instructions are printed and distributed, SSA shall generate and transfer to the appropriate FOs computer-generated alerts pertaining to the claims of all individuals, up to 10,000, who have requested reopening. Within each 90–day interval thereafter, SSA shall transfer alerts pertaining to all, up to 10,000, remaining individuals who have requested reopenings. SSA shall continue such transfers until alerts pertaining to all individuals who have requested reopenings have been transferred. Nothing in this subparagraph shall preclude SSA from transferring more than 10,000 alerts within each interval.

(3) As alerts are transferred to the FOs, reopened claims for class members currently residing in New York State will be integrated into the regular claims determination workload of the New York ODD and will be completed within a reasonable time and with no less priority than such regular claims. Reopened claims for class members who do not reside in New York State will also be completed within a reasonable time.

(4) Within 90 days of issuing any allowance determinations on these reopened claims, SSA will undertake development of title II nondisability factors of eligibility and auxiliary applications and of title XVI nondisability factors of eligibility in order to determine payment amounts and effectuate payments.

(e) SSA will follow these procedures for reopening *Stieberger* claims:

(1) Class members who request reopening, and are due reopening, will be contacted by the appropriate FO after the FO is alerted by SSA to the request. The FO will inform the class member of his or her right to submit evidence in support of the class member's claim of disability. An appointment will be made to fill out a disability report on the class member's impairment(s) and medical sources. Information obtained at the FO interview will be sent to the component responsible for rendering a determination on the reopened claim.

(2) When the class member has no active disability claim pending at any administrative level at the time of the FO interview, SSA will reopen the *Stieberger* claim(s) at the reconsideration level. When the class member has an active disability claim pending at any administrative level at the time of the FO interview, SSA may, unless the class member objects, consolidate the *Stieberger* claim(s) reopening with the active disability claim (i) in OHA, if the active disability claim is pending in OHA or (ii) at the reconsideration level, if the active disability claim is pending at the initial or reconsideration level.

(3) In conducting each reopening of claims that are pending, SSA shall develop the record pursuant to 20 C.F.R. §§ 404.-1512–.1518, 416.912–.918. For purposes of this subparagraph and subparagraphs 10(e)(4), (7), and (8), a pending claim is one for which judicial or administrative review at any level has been requested or would be timely, but for which a determination or decision at that level has not been rendered as of the date reopening is requested.

(4) In conducting each reopening of claims that are not pending, SSA shall develop the record in accordance with 20 C.F.R. §§ 404.1512–.1518, 416.912–.918 for a four-year period preceding the date SSA receives the request for reopening of the claim(s). In computing the four-year period, SSA shall not count any period for which the person (i) received disability benefits, (ii) received retirement benefits, (iii) has an active claim for disability or retirement benefits, or (iv) has a final denial or termination (on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1) issued on a date when the person no longer resided in New York State. SSA shall also develop the record for the period subsequent to the date SSA receives the request for reopening, unless the person has already demonstrated entitlement to benefits for this period. SSA need not develop the record for any period of time prior to the effective date of the earliest claim subject to reopening or for any period of time for which SSA determines that the individual is disabled without further development.

(5) If SSA determines (at any step of the sequential evaluation process) that the individual is not disabled, or is not entitled to disability benefits because of SGA, for all or any part of the period for which the record is developed under subparagraph 4, SSA will also develop the record for the additional earlier period for which there is in effect an application the determination on which establishes the opportunity for reopening as set forth in paragraph 8 (except for periods for which SSA has issued a final denial or termination on a date when the individual resided outside of New York

State on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1), if:

(i) the individual has a chronic impairment that the individual alleges was more severe in the past, and more information is needed about any earlier, acute phase (*e.g.*, rheumatoid arthritis in major joints that is not currently active, previously uncontrolled epilepsy that is now under control, previously uncontrolled diabetes that is now under control); or

(ii) the individual has a new treating source(s) or no treating source and it is learned that other evidence may be available, *e.g.*, from former treating source(s) that may attest to more serious impairment.

(6) If further development is required under subparagraphs 10(e)(5)(i)–(ii), SSA shall secure prior folders and reconstruct evidence to ensure full and fair consideration of the claim, unless disability can otherwise be found for such period.

(7) When a person is found entitled to disability benefits on a non-pending claim or claims reopened under this paragraph, all payments on such claims are subject to the regular payment, nonpayment and reduced payment provisions of the Social Security Act and payments will be made as follows:

(i) Persons found disabled during the period specified in subparagraph 4 will be paid for the period ending with (and including) the month that includes the date halfway between April 1, 1991, and the date of settlement and beginning with (and including) whichever of the following is later: (a) the first full month that began within 4 years of the date halfway between April 1, 1991, and the date of settlement or (b) the earliest date of potential entitlement. Any such person will also be paid for periods after the month that includes the date halfway between April 1, 1991, and the date of settlement so long as that person continued to be disabled and otherwise eligible.

(ii) Persons found disabled pursuant to development exceptions under subpara-

graphs 10(e)(5)(i)–(ii) above will be paid for the latest possible entitlement period, of up to 4 years, preceding the first day of the first month beginning on or after the date halfway between April 1, 1991, and the date of settlement. Any such person will also be paid for the period beginning on or after the first day of the first month beginning on or after the date halfway between April 1, 1991, and the date of settlement so long as that person continued to be disabled and otherwise eligible.

(iii) In computing the period for which payment is possible under subparagraphs 10(e)(7)(i) and (ii), SSA shall not count periods for which the person has already been paid disability or retirement benefits, periods for which the person may be eligible for payment under an active claim, or periods for which SSA has issued a final denial or termination (on grounds other than that disability had been previously determined administratively in New York State prior to the issuance of Attachment 1) when the person resided outside of New York State. In addition, payment need not be made on the basis of any application filed earlier than the application the determination on which establishes the opportunity for reopening as set forth in paragraph 8. Earlier periods of entitlement followed by periods of nonentitlement will be treated as closed periods.

(iv) A person claiming Title II benefits shall be considered insured, unless a determination is made after appropriate development that the claimant was not disabled as of the date last insured.

(8) Persons found disabled on pending claims will be paid pursuant to 20 C.F.R. §§ 404.315–.325; 416.501–.502, and payment shall not be subject to the restrictions of subparagraph 7. Payment on a pending claim does not limit any rights to payment on nonpending claims reopened under this paragraph, except that payment shall not be made more than once for the same period.

(f) SSA will notify each class member of the outcome of the reopening of his or her claims. SSA notices shall set forth the following information, in addition to the information that is routinely included in such notices: (i) the dates of the periods for which disability was considered; (ii) the dates of the periods for which disability is established; (iii) the dates of the periods for which benefits are being awarded, if any; (iv) the basis for any finding of nondisability or denial of benefits.

(g) SSA shall promptly certify payment to the Department of the Treasury for those class members found eligible for payments. Any and all payments of retroactive Title II or Title XVI benefits resulting from reopenings under this settlement shall be made in accordance with the Social Security Act and regulations, as amended.

(h) Individual class members retain all statutory and regulatory rights to administrative and judicial review of any decision on reopening under this settlement. However, the outcome of individual reopenings is not reviewable in this action.

11. SSA shall provide plaintiffs' counsel with the following information about implementation of this settlement:

(a) Beginning 180 days after SSA issues Attachment 1, SSA shall provide plaintiffs' counsel with a statistical report every 120 days on implementation of this settlement. The report shall state the number of individual notices (Attachment 2) mailed; the number of notices returned as undeliverable; the number of requests for reopening by requesters identified pursuant to subparagraph 9(a); the number of other requests for reopening pursuant to paragraph 9; the number of alerts transferred to FOs pursuant to subparagraph 10(d)(2); and the total number of disability claims SSA reopens at the OHA and ODD levels under this settlement subdivided by the number of allowances, denials and dismissals. SSA may cease furnishing plaintiffs' counsel with the reports described in this subparagraph when SSA has completed reopening or otherwise made determinations concerning at least 90 percent of the reopenings requested during a one year period after the last mailing of notices pursuant to subparagraph 9(b). However, if SSA does cease to furnish such reports, SSA shall, upon request by plaintiffs' coun-

sel, provide information that would have been included in such reports.

(b) SSA shall permit plaintiffs' counsel reasonable access to materials reasonably relevant to implementation of paragraphs 9 and 10 of this settlement, and a sample of cases reopened under this settlement solely for the purpose of monitoring compliance with the settlement.

(c) SSA shall furnish plaintiffs' counsel with a copy of instructions issued under paragraphs 4 and 5.

(d)(i) Instructions for implementation of paragraphs 8, 9, and 10 of this settlement shall be issued in HALLEX and the POMS. At least 30 days prior to issuance of any such HALLEX and POMS materials, SSA shall provide plaintiffs' counsel with the proposed instructional materials.

(ii) Plaintiffs' counsel shall have 30 days to respond with objections to or comment on such materials. The parties will first attempt to resolve any objection by negotiation. If plaintiffs' counsel determine that further negotiation would be fruitless, plaintiffs' counsel shall so notify defendants and state either that judicial resolution will be sought or, that the objection should be considered resolved. If defendants conclude that further negotiation would be fruitless, defendants shall so notify plaintiffs' counsel; plaintiffs' counsel shall respond within 14 days and state either that judicial resolution will be sought, or that the objection should be considered resolved.

(iii) If plaintiffs' counsel objects to any portion of the instructional materials, SSA shall not issue the material that is the subject of the objection until the objection is resolved except to the extent provided by subparagraph 11(d)(iv). Any time period required by this agreement for undertaking or completing the actions addressed by the materials provided to plaintiffs' counsel, or that is dependent upon the undertaking or completion of such actions, shall be tolled until plaintiffs' counsel advise that there are no objections or any such objections are resolved.

(iv) In the event that only some portions of proposed instructional materials are ob-

jected to, the parties will attempt in good faith to reach a prompt agreement as to whether transmitting to decisionmakers and reviewers of decisions other portions of the instructional materials prior to resolution of the objection will, on balance, advance the effective, prompt, and efficient administration of the settlement agreement. If the parties are unable to reach agreement, the defendants will determine whether transmittal of some or all of the unobjected-to portions of the instructional materials prior to resolution of the objection will, on balance, advance the effective, prompt, and efficient administration of the settlement agreement, and may thereupon transmit such unobjected-to materials. The provisions of subparagraph 11(d)(iii) will cease to apply with respect to those portions of the materials as to which no objection is made and that are transmitted to agency decisionmakers and reviewers of decisions pursuant to this subparagraph.

(v) In no event shall subparagraph 11(d)(iv) or any other provision of this settlement agreement be deemed to require that defendants transmit to decisionmakers and reviewers of decisions any instructional materials or portion of instructional materials that would require any action to be taken (for example, development of any aspect of a class member's claim for benefits) prior to resolution of any objections if the resolution of such objections could require such action to be taken again (for example, resolution of the objection would require redevelopment of an aspect of a class member's claim). The purpose of this provision is to avoid requiring the defendants to develop or reopen a class member's claim more than once, by virtue of having transmitted portions of instructional materials to which plaintiffs have not objected.

(e) SSA shall provide copies of all final materials implementing this settlement or concerning application of Second Circuit disability decisions to plaintiffs' counsel at the time of issuance to decisionmakers or reviewers of decisions, including, but not limited to, all instructions, teletypes, program circulars, training materials, and vid-

eotapes. SSA shall provide plaintiffs' counsel with a copy of the final Manual of Second Circuit Disability Decisions at the time that SSA distributes the Manual pursuant to paragraph 4.

(f) Plaintiffs' counsel shall be notified of SSA team visits to the New York ODD described in paragraph F of Attachment 1. Plaintiffs' counsel, or their designated co-counsel, may attend such visits solely in the capacity of observers.

12. This settlement does not preclude SSA from issuing acquiescence rulings or suspending or rescinding such rulings in accordance with 20 C.F.R. §§ 404.985 or 416.1485. In the event that SSA suspends or rescinds an acquiescence ruling pursuant to 20 C.F.R. §§ 404.985 or 416.1485, this settlement does not preclude SSA from suspending, precluding or modifying any instructions issued pursuant to this settlement agreement addressing the same holding of the Second Circuit in order to reflect the action taken pursuant to those regulations. This settlement neither precludes nor authorizes any challenges to application of the procedures and criteria set forth in 20 C.F.R. §§ 404.985(c-e); 416.1485(c-e) in any particular instance, or a challenge to such procedures on their face in any other action. Similarly, this settlement neither precludes nor authorizes any challenges in any other actions to the suspension, rescission or modification of instructions issued pursuant to this agreement in order to reflect action taken pursuant to 20 C.F.R. §§ 404.985(c-e) or 416.1485(c-e).

13. This settlement does not supersede or preclude orders or injunctions issued in other actions delaying or accelerating application of a Second Circuit decision, and does not provide a stay of any injunction or order issued in another action.

14. This agreement resolves all claims made by plaintiffs Theresa Stieberger, Milagros Sullivan, and Patricia Happy against defendants in this action. This agreement resolves all claims of all present and future class members that the Social Security Administration (in making determinations of claims for disability benefits of New York State residents) fails or failed, at any time on or after October 1, 1981, and before the eighth anniversary of the date of settlement, to have a policy, or to have instructed, that holdings in Second Circuit disability decisions should be followed by SSA or ODD personnel when making decisions in subsequent cases involving residents of the states within the circuit. *See Stieberger v. Sullivan,* 738 F.Supp. 716, 728–30 (S.D.N.Y.1990). This agreement also resolves all claims of all class members prior to the date of settlement challenging (i) any policies or practices for determining which allowance decisions of ALJs would be examined for possible own-motion review or be subject to own-motion review that used as a criterion in such determination either the percentage of cases in which the ALJ rendering such decisions granted benefits or the percentage of cases in which own-motion review of decisions of such ALJ had been granted; (ii) any policies or practices of random selection of allowance decisions for possible own-motion review; or (iii) any policies or practices determining the percentage of cases to be considered for own-motion review that would be allowance cases. This agreement does not resolve any claim preserved in subparagraphs 5(c) or 5(d) or in paragraphs 12 or 13 of this agreement; any claim that SSA failed or fails properly to comply with the decision of the Second Circuit in *Schisler v. Bowen,* 851 F.2d 43 (2d Cir.1988); any claim challenging the regulations issued by the Secretary on August 1, 1991, 56 Fed.Reg. 36932–70; any claim heretofore raised in *Zebley v. Sullivan,* Civ. No. 83–3314 (E.D.Pa.); *Hill v. Sullivan,* 87 Civ. 4344 (S.D.N.Y.) (LBS); *Dixon v. Sullivan,* 83 Civ. 7001 (S.D.N.Y.) (WCC); *Rios v. Sullivan,* Civ. No. 86–2548 (E.D.N.Y.) (Spatt, J); *State of New York v. Sullivan,* 83 Civ. 5903 (S.D.N.Y.) (RLC); *Kendrick v. Sullivan,* 90 Civ. 3776 (S.D.N.Y.) (RJW); *S.P. v. Sullivan,* Civ. No. 90 Civ. 6294 (S.D.N.Y.) (MGC); any claim that SSA has nonacquiesced in Second Circuit decisions that are not Second Circuit disability decisions as defined in subparagraph 1(f) of this agreement; or any claim not raised in this action. The enumeration in the preceding sentence of claims not addressed in this

action does not represent or imply agreement by defendants that any such claims would state a claim upon which relief can be granted or would otherwise be valid. Nothing in this agreement shall prevent any class member from pursuing an individual administrative appeal, a request for reopening, or a judicial appeal. Nothing in this agreement shall preclude any class member from arguing in the course of such review that any judicial decision was not applied, or was improperly applied, in his or her individual case.

15. (a) Counsel for the parties may, at any time, mutually agree to modify this settlement. If counsel for the parties agree that a modification is minor, *i.e.*, does not significantly affect the rights of plaintiffs under this settlement, the parties will notify the Court. Such minor modifications shall become effective ten (10) days after notification to the Court unless the Court objects to the proposed modification. Modifications that may be minor include extensions of time limits, revised instructional formats, and changes with respect to reporting to class counsel.

(b) Modifications agreed to by the parties that are not minor, or that the parties cannot agree are minor, shall not become effective until approved by the Court through a "so-ordered" stipulation or other procedure specified by the Court.

(c) Any party may seek to modify this settlement by duly noticed motion to the Court (1) if there is an occurrence that undermines a fundamental basis of this settlement (for example, enactment of legislation that renders this settlement inconsistent with law; enactment of legislation that expressly empowers SSA to nonacquiesce in decisions of the courts of appeals in situations that are precluded by this settlement; issuance of a decision of the United States Supreme Court upholding a policy of nonacquiescence by SSA; or alteration of the system of judicial review of denials of disability benefits that fundamentally changes the role of the Second Circuit Court of Appeals in reviewing such denials), or (2) for any other reason that

would be appropriate under Fed. Rule Civ. 60(b).

16. This settlement does not constitute an admission by the defendants of any pattern or practice that violates or fails to comply with any law, rule, or regulation dealing with any matter within the scope of the allegations contained in the complaint or otherwise raised by plaintiffs in this action. This settlement does not constitute an admission by the defendants that their position in this litigation was not substantially justified. Nor is this settlement an admission of liability for attorneys fees on the part of the defendants, their agents, or employees. This settlement does not constitute an admission by defendants that the procedure in this agreement for applying the holdings of the Second Circuit to applicable claims of New York residents will result in consistent or errorless agency decisionmaking and review of decisions or in sound administration of the Social Security Act.

17. Plaintiffs' counsel and defendants' counsel, by their signatures below, warrant that they are sole counsel to the plaintiffs and to the defendants whose interests were represented in this action and that they are authorized to stipulate to the settlement of issues in this action. This settlement shall not be effective until counsel for defendants receives from counsel for the City of New York a letter or other written notice attesting that all required approvals needed to make this settlement binding on the City of New York have been obtained.

18. This settlement shall be submitted to the district court and shall be effective only upon approval of the court.

19. The district court shall retain jurisdiction over this action only for the purposes of enforcing this settlement, resolving disputes over whether claimants are entitled to reopenings as provided by subparagraph 9(h) of this agreement, determining matters concerning modification of this agreement pursuant to paragraph 15, and determining whether plaintiffs are entitled to any attorneys' fees.

20. This agreement shall remain in effect for a period of eight years beginning

on the date of settlement. At the end of this eight-year period the agreement will expire. Such expiration, however, will not affect obligations to take action incurred during the pendency of the agreement, benefits or entitlements to benefits awarded pursuant to the reopenings provided herein, the release and settlement of claims accrued during the eight-year period, or any action or motion to enforce the provisions of the agreement with respect to the eight-year period.

21. (a) *Theresa Stieberger*—SSA agrees that Theresa Stieberger will be paid title II disability insurance benefits beginning with the month of December 1981 based on the onset date of June 15, 1981, which was alleged in both her October 1981 and her April 1983 applications. (Ms. Stieberger has already been paid all title XVI Supplemental Security Income disability benefits to which she is retroactively entitled based on her October 1981 application.)

SSA also agrees that Ms. Stieberger may present evidence that mental incapacity prevented her from timely requesting review of the adverse determination made in her case in November 1974 and that she had no one legally responsible for prosecuting her claim at that time. If Ms. Stieberger presents such evidence, SSA will determine whether or not good cause exists for extending the time to request review as provided in Social Security Ruling ("SSR") 91–5p. If good cause is determined to exist, the time to request review of the November 1974 determination will be extended and the action that would have been appropriate had Ms. Stieberger filed a timely request for review will be taken.

(b) *Milagros Sullivan*—SSA agrees that Milagros Sullivan will be paid title II disability insurance benefits beginning with the month of October 1982, the onset date alleged in her October 1982 application. (Ms. Sullivan has already been paid all title XVI Supplemental Security Income disability benefits to which she is retroactively entitled based on her application of October 6, 1982.)

SSA also agrees that Ms. Sullivan may present evidence that mental incapacity prevented her from timely requesting review of the adverse determination made in her case on July 2, 1980, and that she had no one legally responsible for prosecuting her claim at that time. If Ms. Sullivan presents such evidence, SSA will determine whether or not good cause exists for extending the time to request review as provided in SSR 91–5p. If good cause is determined to exist, the time to request review of the July 2, 1980, determination will be extended and the action that would have been appropriate had Ms. Sullivan filed a timely request for review will be taken.

In addition, Ms. Sullivan may request reopening of the June 25, 1979, initial denial determination as provided in 20 C.F.R. §§ 404.987–.989 and 416.1487–.1489. If Ms. Sullivan makes such a request, SSA will determine whether or not a basis exists for such reopening employing the regulations cited above. If a basis is determined to exist, Ms. Sullivan's June 25, 1979, denial will be reopened.

(c) *Patricia Happy*—SSA agrees that Patricia Happy will be paid title II disability insurance benefits beginning the month of April 1983, based on an onset date of October 1982 when she alleges that she stopped working. (Ms. Happy has already been paid title XVI benefits from February 1985 to September 1989 based on an order of the Court.)

SSA agrees that Ms. Happy will be paid title XVI SSI disability benefits from August 1983, the month of her SSI application, through January 1985.

Benefits for months beginning January 1989 for title II and September 1989 for title XVI will be paid subject to the trial work period, extended period of disability, work incentive and overpayment provisions of the statute and regulations.

(d) Any payments issued to plaintiffs Stieberger, Sullivan, and Happy pursuant to the terms in this paragraph shall be offset against benefit payments already received by these plaintiffs, in accordance with regular program requirements.

(e) Notwithstanding any other provision of this agreement, the relief provided pur-

suant to this paragraph is the sole and exclusive relief to be provided to plaintiffs Theresa Stieberger, Milagros Sullivan, and Patricia Happy in this action.

22. Within ten (10) days of the date of settlement, SSA will inform decisionmakers and reviewers of decisions that SSA instructional materials pertaining to the preliminary injunction that was issued in this case on August 19, 1985, including POMS § 12586.001–095 (Transmittal No. 1, SSA Pub. No. 68–0412500, April 1986), § 32586.-001–095 (Transmittal No. 1, SSA Pub. No. 68–0432500, April 1986), § 42586.001–015 (Transmittal No. 1, SSA Pub. No. 68–0442500, April 1986), and HALLEX §§ I–5–413, –413A, –413B, are no longer of force or effect.

23. The parties will jointly seek an order from the Court permitting the disclosures contemplated by this agreement as a limited exception to otherwise applicable requirements of the Privacy and Social Security Acts. In the event that such an order is not granted in whole or part, the portions of the agreement requiring disclosures that would otherwise be inconsistent with the Privacy or Social Security Acts will not take effect except to the extent permitted by the Court's order, but the validity of the remainder of this agreement shall not be affected by the denial or partial denial of (or inaction upon) the request for such an order.

24. This agreement does not preclude any defendant, any counsel for defendants, any agent for defendants, or any other person (regardless of his or her state of residence) from disagreeing with any Second Circuit decision or holding, from expressing such disagreement or otherwise criticizing any Second Circuit decisions or holdings, or from seeking to overturn or to limit or to have superseded any Second Circuit decision. This paragraph does not, however, authorize any statement that could be reasonably understood by decisionmakers or reviewers of decisions as instructing or authorizing them not to follow any Second Circuit decision or holding.

25. Neither this settlement agreement nor any assertion by plaintiffs that instruc-

tions were not issued in good faith shall be deemed to constitute a waiver by defendants of either any applicable privileges or any applicable protection of the work-product doctrine with respect to: (i) drafts of the instructions required by paragraph 5; (ii) any recommendations or deliberations concerning whether or how to promulgate any such instruction; (iii) any recommendations or deliberations concerning whether to appeal, seek rehearing, or seek *certiorari* with respect to the decision or decisions subject to such instructions; (iv) any draft of, or recommendations or deliberations concerning whether or how to issue, any ruling or proposed ruling of acquiescence under 20 C.F.R. §§ 404.985 and 416.1485; (vi) any materials prepared in connection with or in anticipation of litigation; or (vii) any predecisional materials concerning individual cases, including but not limited to predecisional notes of Appeals Council Administrative Appeals Judges, administrative law judges, or other decisionmakers, and any communications between any such decisionmakers and persons assigned to assist them in preparation of a decision or opinion in an individual case. The omission of a class of privileged documents from the foregoing list shall not give rise to an inference that defendants have waived any privilege except to the extent (if any) that a privilege is expressly waived by specific provision of this agreement. Nor does the inclusion of any class of documents in this paragraph give rise to an inference that such documents are privileged or that plaintiffs have waived any rights with respect to such documents.

### ATTACHMENT 1

### APPLICATION OF SECOND CIRCUIT DECISIONS TO SOCIAL SECURITY ACT DISABILITY BENEFIT CLAIMS OF NEW YORK RESIDENTS

A. *General Rule*

Effective immediately, all persons who decide Social Security Act disability benefit claims of New York State residents or who review such decisions shall follow and apply the holdings of the United States Court

of Appeals for the Second Circuit, except when written instructions to the contrary are issued pursuant to paragraphs D and E. This instruction applies to all Second Circuit disability decisions except those that are expressly designated not for publication.

### B. *How to Apply Holdings*

Holdings of the Second Circuit Court of Appeals must be applied at all levels of administrative review to all claims for title II and title XVI disability benefits filed by New York State residents, unless written instructions to the contrary are issued pursuant to paragraphs D and E. You must apply those holdings in good faith and to the best of your ability and understanding whether or not you view them as correct or sound.

In general, a holding in a decision is a legal principle that is the basis of the court's decision on any issue in the case. There may be more than one holding in a decision. A holding must be applied whenever the legal principle is relevant.

Not all of the discussion in a decision is a holding. For example, the factual discussion in a decision is not a holding although it can help you understand the holding by placing it in context. Also, in their decisions courts may make observations or other remarks that are helpful in understanding the court's reasoning. You are required to apply the holdings, not those observations or other comments of the court.

Of course, you should continue to make sure that the decision whether a claimant is disabled is an individualized decision based on the evidence regarding that claimant.

### C. *Availability of Decisions and Instructions*

To help ensure that decisionmakers and reviewers of decisions apply Second Circuit holdings, SSA will do the following:

1. SSA will provide each office of decisionmakers and reviewers of decisions with a copy of the settlement approved by the Court in *Stieberger v. Sullivan.*

2. SSA will provide all decisionmakers and reviewers of decisions with a Manual of Second Circuit disability decisions ("Manual") containing excerpts of the principal holdings of the Second Circuit issued before [XXXX date], the date that the settlement in *Stieberger* was approved by the Court.

3. SSA will provide each office of decisionmakers and reviewers of decisions with a copy of each Second Circuit disability decision issued after [XXX date] promptly after the decision is issued by the Court. Each such office shall maintain a volume containing copies of these decisions. This volume shall be readily accessible to decisionmakers and reviewers of decisions.

4. SSA will issue instructions to ODD decisionmakers and reviewers of decisions about applying Second Circuit decisions rendered after [xxxx date]. These instructions must be added to the Manual as supplements. SSA may issue instructions to OHA adjudicators.

You should familiarize yourself with the Manual, with SSA's instructions on Second Circuit holdings, and with Second Circuit decisions as they are issued.

While SSA will take the steps described above to help you apply Second Circuit holdings, you must apply the holdings even in the absence of an instruction, and even if they are not included in the Manual.

*Example:* You have become aware of a Second Circuit disability decision (for example, a claimant draws it to your attention or you receive notification of it from SSA), but you have not yet received an instruction from SSA on how to apply the decision and it is not in the Manual. You must apply the holding(s) of that decision to all claims where it is relevant.

### D. *Instructions Regarding When Decisions Become Effective*

1. You must apply the holdings in a decision once the decision becomes effective. A decision of the Second Circuit generally becomes effective 20 days after the decision is issued by the Court, unless a specific written instruction is issued that requires the decision to be applied earlier

or later. If you have not received instructions about a particular Second Circuit decision issued after the date of this instruction, consult with your supervisor for further guidance about whether the decision has become effective. (If you are an administrative law judge, you may inquire with the Regional Office concerning the status of the decision.)

2. As long as a Second Circuit decision is pending further court review, SSA may instruct decisionmakers and reviewers of decisions not to apply some or all holdings stated in that Second Circuit decision. In such instances SSA will issue specific instructions explaining which holdings are not to be applied and identifying the issues addressed by those holdings. When such instructions are issued, decisionmaking and reviewing offices will maintain a list of disability claims decisions that may be affected because the Second Circuit holding is not being applied. Any notice sent to claimants on the list, denying benefits in whole or in part, will include the following language:

> If you do not agree with this decision, you can appeal. You must ask for an appeal within 60 days.
>
> You should know that we decided your claim without applying all of what the court said about the law in _____.
>
> _____ is a recent court ruling that we do not consider final because it may be reviewed further by the courts. If it becomes final, we may contact you again. If you disagree with our decision in your case, do not wait for us to contact you. You should appeal within 60 days of the date you receive this notice. If you do not appeal within 60 days, you may lose benefits.

3. When no further judicial review of a Second Circuit decision will occur, SSA will promptly rescind any instructions issued under this paragraph D, and will advise decisionmakers and reviewers of decisions about the final decision in the case. SSA will also explain what action is to be taken, including any reopenings, with respect to claimants whose cases may have been affected by the instruction not to apply the Second Circuit decision pending further court review.

### E. Issuance and Rescission of Acquiescence Rulings

This instruction on application of Second Circuit decisions to disability benefit claims does not prevent SSA from issuing or rescinding acquiescence rulings, or relitigating issues under 20 C.F.R. 404.985 and 416.1485.

### F. Questions Concerning this Instruction and Second Circuit Decisions

This instruction is issued pursuant to the settlement agreement in *Stieberger v. Sullivan*, 84 Civ. 1302 (S.D.N.Y.). A copy of the complete agreement is available in your office. Any questions about applying Second Circuit decisions that you cannot resolve yourself may be directed to your supervisors and, if more guidance is needed, through supervisory channels to the Litigation Staff in SSA Central Office in Baltimore, Maryland. In addition, a team of SSA personnel will visit the New York ODD one month after you receive this instruction and quarterly thereafter for 3 years to discuss any questions decisionmakers and reviewers of decisions have about applying Second Circuit disability decisions.

### G. Binding Effect of This Instruction

This instruction is binding on all personnel, including state employees, ALJs, Appeals Council Administrative Appeals Judges, quality assurance staff, and all other personnel who process, render decisions on, or review claims of New York residents for disability benefits under the Social Security Act.

Because this instruction arises out of a lawsuit, it does not apply to claims of any persons who do not reside in the State of New York. However, this limitation does not lessen the extent to which court decisions are to be applied to claims of persons who reside in any other state. This limitation also should not be deemed to suggest that such decisions are not given or should

not be given proper consideration in any other state.

## ATTACHMENT 2
## HEADING

We have good news for you about your past claim for disability benefits. We are writing to you about a court case that may affect you. Because of this court case you may be entitled to money from Social Security. Please read this letter carefully.

### INFORMATION ABOUT THE COURT CASE

You may be entitled to Social Security or Supplemental Security Income disability payments based on a past claim you filed. In a recent court case called *Stieberger v. Sullivan,* we agreed to look again at certain claims that were denied or where payments were stopped. We believe that your claim may be one of those that we agreed to look at again.

### HOW TO ASK FOR A REVIEW

We will not look at your claim again unless you ask us to do so. *If you want us to do this, fill out the enclosed reply form that came with this letter and mail it right away in the enclosed envelope.* You have *180 days* from the day you received this letter to ask us to look at your claim again, but don't wait. If you don't send the form back, we will not look at your claim again. We will write to you when we receive your reply form.

### IF YOU NOW GET MONEY FROM SO-CIAL SECURITY

Even if you get money from Social Security, we may still owe you more money. Return the reply form in this letter within *180 days* to ask us to look at your past claim again.

### PROTECTING YOUR RIGHTS

Sending in the enclosed reply form does not protect your rights on any other claim for benefits. If you have a claim for benefits that we are still considering or that we recently denied and you disagree with our decision, you must follow the guidelines that we tell you about in the notice on that claim.

### IF YOU HAVE ANY QUESTIONS

If you have any questions, you may contact any Social Security Office. The address and phone number of your local Social Security office are printed at the top of this page. If you call or visit an office, please take this letter with you. It will help us answer your questions.

### FOR HELP

Additionally, if you have someone helping you with your claim, you should contact him/her. You also may contact one of the following offices to obtain a legal representative, or you may contact the lawyers in this case. These offices are listed below.

### OFFICES THAT WILL REFER YOU TO ORGANIZATIONS THAT PROVIDE FREE LEGAL REPRESENTATION

New York City area:
*Legal Services for New York City,* (212) 431–7200, or
*The Legal Aid Society,* (212) 227–2755.

The Rest of New York State:
*Greater Upstate Law Project,* (800) 724–0490, or (800) 635–0355

### OFFICE THAT WILL REFER YOU TO AN ATTORNEY WHO WILL CHARGE A FEE FOR REPRESENTATION

Throughout New York State:
*National Organization of Social Security Claimants' Representatives,* (800) 431–2804, or (914) 735–8812

### OFFICES OF THE LAWYERS THAT REPRESENTED CLAIMANTS IN THIS LAWSUIT

The Legal Aid Society of New York
Civil Division, Civil Appeals & Law Reform Unit
11 Park Place Room 1805
New York, New York 10007
(212) 406–0745
Legal Services for the Elderly
130 W. 42nd Street 17th Floor
New York, New York 10036–7803
(212) 391–0120
MFY Legal Services
35 Avenue A
New York, New York 10009
(212) 475–8000

ATTACHMENT 3
## NOTICE OF AVAILABILITY OF RELIEF UNDER STIEBERGER V. SULLIVAN

In Stieberger v. Sullivan, Civil Action No. 84 CIV 1302 (LBS) (S.D.N.Y.1990), the Court granted relief to a class of New York residents whose Title II or Title XVI disability benefits were denied or terminated. YOU ARE A MEMBER OF THE STIEBERGER CLASS. Since you also have this separate lawsuit pending, you now need to make a choice.

You can proceed with this individual lawsuit. If you do this, you will not get relief as a STIEBERGER class member on the claim before the court.

### OR

You can request dismissal of your individual lawsuit and receive consideration as a Stieberger class member. As a Stieberger class member, you are entitled to reopening of your claim by the Social Security Administration. In this process, you may present any further evidence you wish to present in relation to your claim. Once the Social Security Administration makes a decision on your claim, you will have a right to both agency and judicial review of the Social Security Administration's decision if you disagree with it.

Defendant's counsel will be happy to give you a copy of the Court's order in the Stieberger case. You may also contact the following offices that were counsel for the class:

The Legal Aid Society
Civil Division, Civil Appeals & Law Reform Unit
11 Park Place Room 1805
New York, New York 10007
(212) 406–0745
Legal Services for the Elderly
130 W. 42nd Street 17th Floor
New York, New York 10036–7803
(212) 391–0120
MFY Legal Services
35 Avenue A
New York, New York 10009
(212) 475–8000

They can answer any questions about the Stieberger case that you may have.

---

Defendant's Counsel