**Theresa STIEBERGER,
et al., Plaintiffs,**

v.

**COMMISSIONER OF SOCIAL
SECURITY, Defendant.**

**No. 84 Civ. 1302(LBS).**

United States District Court,
S.D. New York.

Sept. 24, 2001.

Kathleen Kelleher, The Legal Aid Society, New York, NY, for Stieberger plaintiffs.

Andrew M. Rothstein, Elmira, NY, for Plaintiff Reino Pyhtila.

Terry M. Henry, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Defendant.

### OPINION

SAND, District Judge.

Plaintiffs in *Stieberger v. Sullivan,* 801 F.Supp. 1079 (S.D.N.Y.1992) bring this motion to ask the Court to direct the Social Security Administration ("SSA") to:

(1) find that SSA claimant Reino Pyhtila is a member of the *Stieberger* class and process his request for readjudication; and (2) make every reasonable effort within six months to identify all similarly situated individuals who previously requested and were denied relief under *Stieberger* and reverse its determinations that these individuals are not class members. For the reasons set forth below, plaintiffs' motion is granted.

## Background

In brief, the *Stieberger* action, brought in 1984, challenged the Secretary of Health and Human Services' policy and practice of nonacquiescence in decisions of the United States Court of Appeals for the Second Circuit. Plaintiffs claimed that the Secretary failed to require SSA adjudicators to apply binding interpretations of law issued by the Court of Appeals to claims of New York State residents for disability benefits under Titles II and XVI of the Social Security Act. After prolonged litigation, the parties entered into a settlement agreement approved by the Court in *Stieberger v. Sullivan*, 792 F.Supp. 1376 (S.D.N.Y.1992), as amended in *Stieberger*, 801 F.Supp. at 1079.

The *Stieberger* settlement establishes procedures to ensure that SSA adjudicators follow and apply Second Circuit disability decisions in the future and rectify past misapplications of law. To this end, the settlement defines the class entitled to reopen and readjudicate claims and stipulates procedures for identifying, screening, reopening, and readjudicating such cases. Specifically, the *Stieberger* settlement provides for reopening of individuals' SSA claims who:

> (a) ... had a disability claim denied or terminated between October 1, 1981, and July 2, 1992, on the ground that the person was not or was no longer disabled (denials or terminations for rea-

sons other than disability were not included);

> (b) was a New York state resident at the time of the denial or termination;
> (c) had a disability claim denied or terminated;
>> (i) at any level of administrative review between October 1, 1981, and October 17, 1985, inclusive; or (ii) at the Administrative Law Judge or Appeals Council level between October 18, 1985 and July 2, 1992.

*See Stieberger*, 801 F.Supp. at 1086 (¶ 8).

This dispute arises from the parties' conflicting understandings of the settlement agreement's definition of eligible class members set out above. The facts of this case are as follows. Mr. Pyhtila, a fireman and carpenter, filed an application for Social Security disability benefits on May 28, 1980 for various conditions including arthritis, Miniere's disease and depression. The SSA rejected the case upon the initial application and reconsideration. In July 1981 following a hearing requested by Mr. Pyhtila, the Administrative Law Judge ("ALJ") partially denied Mr. Pyhtila's claim. The ALJ found Mr. Pyhtila to be disabled as of January 1980 but rejected Mr. Pyhtila's alleged onset date of June 1978. Mr. Pyhtila, seeking approval of the earlier onset date, appealed the decision to the Appeals Council. On April 7, 1982, the Appeals Council denied Mr. Pyhtila's request for review.

Plaintiffs maintain that Mr. Pyhtila and similarly situated individuals (*i.e.* those who received adverse ALJ decisions prior to October 1, 1981 and who were subsequently denied requests for review by the Appeals Council after October 1, 1981) are entitled to reopen their claims pursuant to the *Stieberger* settlement. The SSA disagrees. The SSA has determined (by notice dated November 30, 1998 and by confirmation letter dated April 27, 2001) that

Mr. Pyhtila is not entitled to a *Stieberger* reopening. The SSA's position, presently and throughout this dispute, is that the denial of a request to review by an Appeals Council does not constitute a "denial or termination" within the meaning of the *Stieberger* settlement. In the case of Mr. Pyhtila and others similarly situated, the SSA maintains, SSA "denial or termination" of their claims occurred at the ALJ level, prior to October 1, 1981, the trigger date for *Stieberger* relief. The SSA therefore concludes that Mr. Pyhtila and similarly situated claimants are ineligible to revisit their claims. Plaintiffs challenge the SSA's determination.

### Discussion

Resolution of the instant motion turns on a discrete issue of contractual interpretation. The Court must construe the definition of class members set out by the *Stieberger* settlement to determine whether or not Mr. Pyhtila and similarly situated individuals are entitled to relief. In brief, to be eligible for a *Stieberger* reopening, a claimant must be a New York State resident whose SSA disability claim was either denied or terminated on the basis of a finding of no disability between October 1, 1981, and July 2, 1992.

In the instant case, the parties do not dispute either Mr. Pyhtila's residency or the SSA's rationale for denying Mr. Pyhtila's claim. (All acknowledge that Mr. Pyhtila was a New York resident at the time of the claim and that the SSA denied this claim on the grounds that he was not disabled.) The parties, however, contest whether or not the claims of Mr. Pyhtila and similarly situated individuals meet the *Stieberger* date requirements. As stated above, the *Stieberger* settlement provides that a SSA claimant who meets the aforementioned residency and substantive requirements is entitled to reopen a claim if such claim was "denied or terminated (i) at any level of administrative review between October 1, 1981, and October 17, 1985, inclusive; or (ii) at the Administrative Law Judge or Appeals Council level between October 18, 1985 and July 2, 1992." *Stieberger*, 801 F.Supp. at 1086 (¶ 8c).

Plaintiffs maintain that the plain language of the *Stieberger* settlement and the policy that compelled it, direct finding Mr. Pyhtila and similarly situated individuals to be class members. First, plaintiffs assert that by the plain language of the *Stieberger* settlement that Mr. Pyhtila is a class member. Plaintiffs assert that in denying Mr. Pyhtila's request for review on April 7, 1982 the Appeals Council denied his disability claim at a level of administrative review between October 1, 1981, and October 17, 1985. "[A]n Appeals Council denial of review," plaintiffs aver, "is in fact a denial of a claim." (June 25, 2001 Letter to Judge Sand from Kathleen Kelleher on behalf of the *Stieberger* class at 3). Second, plaintiffs maintain that an examination of the procedure of Appeals Council administrative review reinforces this reading. Plaintiffs explain that in deciding whether or not to grant a party's request to review the Appeals Council must make a comprehensive review of the lower record and more specifically, plaintiffs point out, administrative regulations provide that if the Appeals Council determines that "there is an error of law" it must review the case. 20 C.F.R. § 404.970. Absent *Stieberger* relief, plaintiffs thus argue, Mr. Pyhtila and similarly situated claimants cannot guarantee that the Appeals Council followed and applied binding Second Circuit decisions in their individual cases. In sum, plaintiffs maintain that the plain language of the *Stieberger* settlement coupled with the policy and practices guiding its formation and application mandate SSA reopening of Mr. Pyhtila's claim as well as those of similarly situated individuals.

The SSA, for its part, rejects plaintiffs' conflation of an Appeals Council denial of a request to review a claim with the denial of a claim itself. First, the SSA maintains that the relevant date for purposes of *Stieberger* relief is the date when the substance of a party's claim is finally denied. The SSA reasons that in the instant case Mr. Pyhtila's claim was substantively denied at the ALJ level—prior to the October 1, 1981 trigger date for *Stieberger* review—and, consequently, that Mr. Pyhtila is not eligible to reopen his claim. "The Appeals Council action," the SSA argues, "... merely declined the request for review of the decision in the case; it was not a decision on the claim and was not a 'denial' for purposes of" the *Stieberger* settlement. (July 19, 2001 Letter to Judge Sand from defense counsel Terry M. Henry at 6). The SSA explains that if the Appeals Council had granted review of the ALJ decision and then issued a decision denying Mr. Pyhtila's claim, Mr. Pyhtila would be a proper *Stieberger* class member. According to the SSA, therefore, class membership turns on the distinction between procedure and substance. If, the SSA maintains, the Appeals Council denies a party's request to review a claim, the Appeals Council decision is "merely" procedural (the ALJ decision remains "final"). In this case, *Stieberger* is inapposite. If, on the other hand, the Appeals Council denies a party's claim substantively on review, this decision is final and *Stieberger* applies.

Second, the SSA contends that any other disposition of this matter would conflict with the *Stieberger* scheme as fully developed by the parties. The SSA maintains that agreements reached after 1992 between the parties to manage ancillary issues indicate that the parties contemplated a result contrary to that advanced presently by the plaintiffs. In particular, the SSA is troubled by the conflicting place of a "final" decision in (1) another clause of the *Stieberger* settlement; (2) the "POMS" instructions for settlement implementation issued in 1996; and most notably (3) the 1993 "bridge case" agreement discussed below. The SSA stresses that surrounding language in the *Stieberger* settlement as well as in the "POMS" instructions indicate that the *Stieberger* class should consist of New York state residents whose claims were *finally* denied or terminated within the relevant period and maintains that in the instant case that this final, substantive denial occurred at the ALJ level.

The inconsistency in plaintiffs' position, the SSA maintains, is sharpest when one examines the "bridge case" issue. "Bridge cases" are those cases whose administrative records straddle the other date pole of the *Stieberger* period (*i.e.,* those claims in which the ALJ issued its decision prior to July 2, 1992, the effective date of the *Stieberger* settlement, but in which Appeals Council action occurred after July 2, 1992). In resolving the "bridge case" issue, the parties determined that if the Appeals Council denied a request for review after July 2, 1992, the claimant qualified for reopening. If, on the other hand, the Appeals Council granted a request for review and issued a decision on the claim after July 2, 1992, the claimant would not be entitled to a reopening under the settlement. The SSA maintains that this agreement was driven by the parties' understanding of what constituted a "final" decision and argues that if one applies the logic of the "bridge case" agreement to the instant controversy, one must note the inconsistency in plaintiffs' position. In regards to 1982, the SSA asserts, plaintiffs seek to label an Appeals Council decision to deny a request for review as "final" but in regards to 1993 reject this interpretation. In short, the SSA argues that the plaintiffs' resolution of the instant matter is fundamentally unfair as it forces

the SSA to reopen claims when the Appeals Council denied a request to review both during the period of eligibility for *Stieberger* relief (October 1, 1981 to July 2, 1992) and when it did so after the period of eligibility ended.

The SSA's perception of the *Stieberger* settlement and its accompanying agreements as favoring applicants for relief is understandable. Its antagonism to this partiality, however, is misplaced. The *Stieberger* settlement was designed to provide relief to New York state residents who submitted disability claims when the SSA did not acquiesce in following and applying binding Second Circuit decisions. The *Stieberger* settlement did not parcel out relief parsimoniously but rather extended it to each and every individual whose disability claim may have been denied or terminated by the SSA due to its erroneous application of the law. *Stieberger* relief does not denote that a disability claimant should receive any additional benefits; it does mean, however, that a claimant whose case may have been unfairly denied or terminated should have the opportunity to reopen it so as to ensure the SSA's accurate application of the law to the claim. Mr. Pyhtila and similarly situated individuals are entitled to this relief.

First, the plain language of the settlement, as plaintiffs point out, indicates that Mr. Pyhtila and similarly situated individuals deserve to reopen their claims. To be eligible for a *Stieberger* reopening, a claimant must be a New York state resident whose SSA disability claim was either denied or terminated on the basis of a finding of no disability "at any level of administrative review between October 1, 1981, and October 17, 1985, inclusive . . .". *Stieberger,* 801 F.Supp. at 1086 (¶ 8c). Mr. Pyhtila and similarly situated individuals fit into this category. Second, in spite of SSA assertions to the contrary, the policy driving *Stieberger* supports this interpreta-

tion. The SSA maintains that when the Appeals Council denies a request for review, it does not issue a final, substantive decision but rather only satisfies a procedural requirement and, therefore, does not "deny" a claim. While it is true that an Appeals Council decision to deny a request for review may not set precedent, it does not follow that the Appeals Council's assessment of a claim is devoid of substance, merely procedural or unfit for *Stieberger* review. When the Appeals Council evaluated Mr. Pyhtila's request for review, it had to determine whether or not the ALJ applied the law correctly. In Mr. Pyhtila's case, the Appeals Council did so on April 7, 1982—at a time when the SSA was actively engaged in a policy of non-acquiescence. As such, there is a danger that the SSA unfairly denied Mr. Pyhtila's claim. Since the *Stieberger* settlement was specifically intended to redress such a situation we find that reopening Mr. Pyhtila's claim as well as those of similarly situated individuals is not only appropriate, it is necessary.

Finally, we are not persuaded that the parties' resolution in regards to the "bridge cases" renders our decision inequitable. While we acknowledge the asymmetry of plaintiffs' position if evaluated on the basis of what constitutes a "final" decision, we find no indication that the plaintiffs ever engaged in this technical analysis in agreeing to the resolution. Plaintiffs state that they supported the "bridge case" agreement because it guaranteed that a written decision was issued in all "bridge cases" after July 2, 1992 and, hence, fulfilled plaintiffs' objective that all class members' claims were adjudicated pursuant to Second Circuit law. Plaintiffs submit further that their current position endeavors to reach the same outcome. Insofar as the SSA relied on a different understanding of the importance of a "final" agency decision in reaching the

"bridge case" accord with the plaintiff class, we regret the miscommunication between the parties. We decline, however, to predicate our decision on this basis.

### Conclusion

For the reasons stated herein, the Court hereby grants the *Stieberger* plaintiffs' motion to direct the SSA to: (1) find that SSA claimant Reino Pyhtila is a member of the *Stieberger* class and process his request for readjudication; and (2) make every reasonable effort within six months to identify all similarly situated individuals who previously requested and were denied relief under *Stieberger* and reverse its determinations that these individuals are not class members.

SETTLE ORDER ON NOTICE.