Theresa **STIEBERGER,**
et al., Plaintiffs,

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 84 CIV. 1302(LBS).**

United States District Court,
S.D. New York.

March 7, 2002.

---

The Legal Aid Society, Scott A. Rosenberg, Esq., New York City, for Stieberger plaintiffs.

U.S. Department of Justice, Civil Division, Federal Programs Branch, Terry M. Henry, Esq., Washington, D.C., for Defendant.

## Opinion

SAND, District Judge.

Plaintiffs in *Stieberger v. Sullivan,* 801 F.Supp. 1079 (S.D.N.Y.1992) bring this claim to ask the Court to direct the Social Security Administration ("SSA") to: (1) find that SSA claimant John A. Hawes ("Mr.Hawes") is a member of the *Stieberger* class and process his request for readjudication; and (2) make every reasonable

effort within six months to identify all similarly situated individuals who previously requested and were denied relief under *Stieberger* and reverse its determinations that these individuals are not class members. For the reasons set forth below, plaintiffs' motion is denied.

*Background*

Mr. Hawes originally filed this claim pro se against the SSA, *John A. Hawes v. Commissioner of Social Security,* 01 Civ. 7482(LBS), claiming that the SSA erroneously denied his right to reopen his claim under the terms of the settlement in *Stieberger v. Sullivan,* 801 F.Supp. at 1088, 1095 (¶¶ 9(h)(2), 19 of settlement). As a preliminary matter, we convert Mr. Hawes' individual complaint into a challenge within the framework of the *Stieberger* case and redocket it under *Stieberger v. Commissioner of Social Security,*. Both class counsel for the plaintiffs in *Stieberger* and the government have indicated that such a course is appropriate insofar as our jurisdiction in the instant case is premised on the Stieberger settlement, *Stieberger,* 801 F.Supp. at 1088, 1095 (S.D.N.Y. 1992) (¶¶ 9(h)(2), 19 of settlement)[1] and Mr. Hawes' complaint bears on the rights of similarly situated individuals. (Jan. 18, 2002, Letter from Scott A. Rosenberg to Judge Leonard Sand at 1).

The current dispute, like several preceding controversies, concerns the parties' divergent interpretations of certain provisions of the settlement agreement reached in *Stieberger,* 801 F.Supp. at 1079.[2] This controversy concerns whether claimant

---

1. 42 U.S.C. § 405(g)(h) provides for judicial review of a decision of the Commissioner of Social Security *only* after a "final decision...after a hearing to which...[the claimant] was a party." *Stieberger* determinations, which do not involve any hearings, are not "final decisions" within the meaning of the statute. *See also* 42 U.S.C. § 1383(c)(3).

2. The parties have recently litigated the meaning of the same provision of the settlement in a different context, *Stieberger v. Commissioner of Social Security,* 166 F.Supp.2d 845 (S.D.N.Y.2001).

John Hawes and similarly situated individuals—who were denied Social Security benefits at the initial level prior to October 17, 1985 and at the reconsideration level after October 17, 1985 but did not appeal their claims to an Administrative Law Judge ("ALJ")—are eligible for reopening of their claims pursuant to the *Stieberger* settlement.

The background of the instant case is familiar. As we have noted in previous opinions, the *Stieberger* action, brought in 1984, challenged the Secretary of Health and Human Services' policy and practice of nonacquiescence in decisions of the United States Court of Appeals for the Second Circuit. Plaintiffs claimed, *inter alia*, that the Secretary failed to require SSA adjudicators to apply binding interpretations of law issued by the Court of Appeals to claims of New York State residents for disability benefits under Titles II and XVI of the Social Security Act. The settlement agreement, approved by this Court in *Stieberger v. Sullivan*, 792 F.Supp. 1376 (S.D.N.Y.1992), as amended in *Stieberger*, 801 F.Supp. at 1079, established procedures to ensure that SSA adjudicators follow and apply Second Circuit disability decisions in the future and rectify past misapplications of law. The settlement defines the class entitled to reopen and readjudicate claims and stipulates procedures for identifying, screening, reopening, and readjudicating such cases. Specifically, the *Stieberger* settlement provides for reopening of individuals' SSA claims who:

(a) ... had a disability claim denied or terminated between October 1, 1981, and July 2, 1992, on the ground that the person was not or was no longer dis-

abled (grounds for denial or termination other than disability, *e.g.*, excess resources, were excluded,);

(b) was a New York state resident at the time of the denial or termination;

(c) had a disability claim denied or terminated,

(i) at any level of administrative review between October 1, 1981, and October 17, 1985, inclusive; or (ii) at the Administrative Law Judge or Appeals Council level between October 18, 1985 and July 2, 1992.

*Stieberger*, 801 F.Supp. at 1086 (¶ 8).

Mr. Hawes filed concurrent applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("the Act") and disability insurance benefits under Title II of the Act in June 1985. (R. at 1). On September 1, 1985, the SSA issued an initial denial of both claims. It denied Mr. Hawes' Title XVI SSI claim on the grounds of excess resources and his Title II claim on disability-related grounds. The SSA issued a further denial on reconsideration on December 1, 1985 on the same grounds. (R. at 27). There is no record that Mr. Hawes appealed the decision to an ALJ.[3]

The parties agree that pursuant to the terms of the settlement agreement that Mr. Hawes may not reopen his Title XVI claim. (A denial of a Title XVI claim on the grounds of excess resources precludes a claimant from *Stieberger* relief; the settlement only redresses denials based on disability. *Stieberger*, 801 F.Supp. at 1086 (¶ 8)(a).) The parties, however, dispute

---

**3.** At points in this litigation, Mr. Hawes has maintained that he did appeal the decision to an ALJ and, indeed, received a subsequent denial therefrom. (R. at 8 (¶ 1.B), 9 (¶ 7)). Neither class counsel for the plaintiffs nor the government can locate such an ALJ decision

in their records. Likewise, according to the government, Mr. Hawes has been unable to furnish it with a copy. (January 17, 2002, Letter from Terry M. Henry to Judge Sand at 4).

whether Mr. Hawes is entitled to reopen his Title II claim.

Both parties maintain that the meaning of the settlement agreement is plain; yet each avers that the plain meaning directs the court to a diametrically opposite resolution. According to the plaintiffs, the claims of Mr. Hawes and similarly situated individuals fit squarely into the language of ¶ 8(c) of the settlement agreement. Plaintiffs claim that Mr. Hawes received two denials within the meaning of the settlement—one at the initial level and another at the reconsideration level. Since the claims of Mr. Hawes and similarly situated individuals were "denied" at a "level of administrative review between October 1, 1981, and October 17, 1985," plaintiffs argue, these individuals are entitled to reopen their claims under the *Stieberger* settlement. (Jan. 18, 2002, Letter from Scott A. Rosenberg to Judge Leonard Sand at 4).

The government vigorously refutes this notion. Characterizing plaintiff's position as "strained," the government asserts that the plain meaning of ¶ 8(c) of the settlement agreement dictates an alternate finding.[4] (Feb. 22, 2002, Letter from Terry M. Henry to Judge Leonard Sand at 4). By the government's estimation, there were not two denials for purposes of ¶ 8(c)—one in September 1985 and the other in December 1985—but only one on reconsideration. The government explains that because the preliminary denial was never "binding" and "had no legal effect on the final disposition of Mr. Hawes' claim for benefits" (Feb. 22, 2002, Letter from Terry M. Henry to Judge Leonard Sand at 4; citing 20 C.F.R. 404.905) for purposes of *Stieberger* analysis, the only denial that this court should look to is the "final" denial.[5] *Id.* ( ¶ 8(c) "contemplates the ultimate denial of the claim; there is no intimation that a claim 'denial or termination' refers to the preliminary administrative determinations that may precede the actual, binding denial or termination of a claim.")[6] In short, the government argues that Mr. Hawes received only one "denial"—at the level of reconsideration in December 1985—during a period when the plain language of the settlement only permits *Stieberger* relief for claims "denied or terminated" by either an ALJ or the Ap-

---

4. The government also argues that plaintiffs' position is foreclosed by a number of other legal doctrines such as waiver, judicial and equitable estoppel, and laches. (Feb. 22, 2002, Letter from Terry M. Henry to Judge Leonard Sand at 6–7). Because we decide this dispute based on the settlement terms alone, we do not reach the substance or merits of these arguments.

5. In its letter brief, the Government cites our recent Memorandum & Order in *Vasquez v. Commissioner of Social Security*, 01 Civ. 8587(LBS) to support this proposition. (See Feb. 22, 2002, Letter from Terry M. Henry to Judge Leonard Sand at 4, n. 5). This holding did not, however, directly address the controversy at hand; it spoke to the degree of finality required for an ALJ decision. In *Vasquez*, we stated that "the *Stieberger* settlement only provides for reopening of claims that were finally denied or terminated at the Administrative Law Judge level prior to or on July 2, 1992." *Vasquez*, 01 Civ. 8587(LBS) at 4. In that case, the claimant received a number of ALJ denials during the dates covered by the *Stieberger* settlement; however, we found claimant was ineligible for *Stieberger* relief because he received an additional and partially favorable ALJ disposition in 1993, after the conclusion of the period set out for *Stieberger* relief.

6. The government suggests that had Mr. Hawes appealed the matter to the ALJ level and had he been denied, Mr. Hawes would be entitled to *Stieberger* relief; however, since he chose to rest at the reconsideration level, he cannot reopen his claim. (February 22, 2002, Letter from Terry M. Henry to Judge Sand at 3).

peals Council. *Id.*[7]

*Analysis*

The clear purpose of the *Stieberger* order was to permit reopening of cases in which the effective denial of benefits occurred at a time when the subsequently invalidated non-acquiescence rule was in force. Plaintiff's contention that a reopening is mandated because his Social Security status was denied prior to October 1985 during an interim stage in the process plainly ignores the intent of the agreement.

Our prior decision in *Stieberger v. Sullivan*, 738 F.Supp. 716 (S.D.N.Y.1990) adjudged that after October 17, 1985 the SSA was applying invalid law primarily at the ALJ and Appeals Council levels of review. *Id.* at 732–33, 758–59. Because Mr. Hawes and similarly situated individuals received denials on reconsideration at a time when we found that the SSA was adhering to valid policies of review at this level,[8] their current arguments are unavailing.[9]

Further, plaintiffs' position directly conflicts with the parties' long-standing interpretation of the order as manifested in jointly developed implementation measures included in the Program Operations Manual System ("POMS") instructions. In particular, the POMS instructions contain a "screening sheet" approved by the parties to assist SSA personnel in reviewing the vast number of requests for reopening. As the government rightly points out, a number of items on this sheet reflect the parties' common understanding that claimants are not entitled to *Stieberger* reopenings for interim decisions. *See* R. at 17–18 (Item # 10, asking "Were the ... [requester's] claims for disability benefits *finally denied/ceased* at any level between October 1, 1981, and October 17, 1985, inclusive; or, between October 18, 1985 and the July 2, 1992, inclusive, at the hearings or Appeals Council levels of review?" (emphasis added). Items # 8 and # 9 of the

---

**7.** The government also submits substantial evidence in support of the parties' mutual intent (at the time of drafting and thereafter) to limit *Stieberger* relief after October 17, 1985 to the ALJ or Appeals Council levels. *See infra* n. 8.

**8.** The party submissions to this court at the time of the settlement agreement clearly support this understanding. *See* Jt. Dec. of Class Counsel in Support of Proposed Settlement Class, Govt. Exh. A at 13 (noting that after October 17, 1985, this "Court had found non-acquiescence related principally to the conduct of hearings by administrative law judges, and thus did not readily create a predicate for reopening claims denied at other levels)"; Pls. Test. at Settlement Approval Hearing at 8, Govt. Exh. C (commenting "[t]he only segment of the class that will not receive the opportunity for reopenings under the proposed settlement are those class members denied at the lower levels of adjudication after 1985 who did not appeal to the administrative law judge level of review... [because] in our judgment it is unlikely that the court would have ordered these cases to be reopened");

Def. Memo. Re: Proposed Settlement, Govt. Exh. B at 9 (proposing same explanation).

**9.** We also observe that plaintiffs' interpretation is contrary to established principles of contract interpretation. *See e.g.*, *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.1992) (when possible a court should interpret a contract to "[give] reasonable and effective meaning to all the terms of a contract" rather than "leav[ing] a part unreasonable or of no effect") (internal quotations omitted). The plaintiffs' proposed interpretation would create conflicting clauses. If, as the plaintiffs suggest, Mr. Hawes and similarly situated individuals received two "denials", these individuals would qualify for relief pursuant to ¶ 8(c)(i) even though explicitly precluded from it by clause ¶ 8(c)(i)(i). Because the language of the ¶ 8(c) is disjunctive (clauses (i) and (ii) are joined by "or"), the initial denial—rather than the one on reconsideration—would control. The government's interpretation, in contrast, would not produce such an internal conflict.

screening sheet are consistent with the language in Item #10 (*i.e.*, they contemplate the final denial of an individual's claim)).

*Conclusion*

Because plaintiffs' position is inconsistent with the language and intent of the agreement, principles of contract interpretation and the previous position taken by the parties, we find that *Stieberger* reopenings do not extend to Mr. Hawes and similarly situated individuals.[10]

SO ORDERED.

10. We note that our holding in the instant case is consistent with our opinion in *Stieberger v. Commissioner of Social Security*, 166 F.Supp.2d 845 (S.D.N.Y.2001). The version of the government's "final denial" theory we accept here encompasses a denial by the Ap-

peals Council of a claimant's request to review between October 1, 1981 and July 2, 1992, inclusive. (Claimants who received denials by the Appeals Council of requests to review after July 2, 1992 are covered by the parties' "bridge case" agreement. *Id.* at 848.)